IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT N. GOFF, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| vs. | : | NO. 14-3415 |
| | : | |
| KUTZTOWN UNIVERSITY, et al., | : | |
|     Defendants | : | |

# M E M O R A N D U M

**STENGEL, J.**                                                                                       October  22, 2014

This is a civil rights action filed pursuant to 42 U.S.C. § 1983 by Scott N. Goff against his former employer Kutztown University, alleging a violation of his free speech rights under the First Amendment to the Constitution, and two violations of the due process clause of the Fourteenth Amendment.  He also brings a claim of retaliation against John Dillon, the University's Chief of Police.  The defendants have filed a motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.  The plaintiff responded to the motion by conceding that the three counts against Defendant Kutztown University should be dismissed, but argued that because the count against Defendant Dillon was brought in his personal or individual capacity,[1] it should survive the motion to dismiss.  For the reasons that follow, I will grant the motion in its entirety.

---

[1] The complaint does not specifically indicate in what capacity Chief Dillon was being sued.  It does, however, provide a definitive clue that the count was brought against him in his official capacity only.  Paragraph 4 of the complaint states:  "The unlawful acts and practices of the defendants were committed by the ***policy making officials of the defendants*** within the Commonwealth of Pennsylvania and within the Eastern District of Pennsylvania." (Emphasis added).  With no other indication to the contrary, I must assume that the claim was brought against Chief Dillon in his official capacity.  Nevertheless, in the interests of justice, I will discuss the claim as though it were brought against Chief Dillon in his personal capacity.

## I. BACKGROUND[2]

On December 21, 2010, Kutztown University hired the plaintiff as a full-time police officer with a temporary appointment. In September 2011, Mr. Goff's employment status was changed when he received a permanent appointment as a full-time university police officer earning approximately $16.80 per hour. The terms of his appointment were governed by a Collective Bargaining Agreement that provided that his appointment was subject to a six month probationary period.[3] The complaint alleges that Mr. Goff successfully completed the probationary period on March 21, 2012, and the terms of the Collective Bargaining Agreement provided that he could not be terminated except for "just cause."

In February 2012, Mr. Goff received a phone call from the wife of another university police officer who said that her husband had threatened her with a gun. She asked Mr. Goff if he would help her select a gun for her self-defense. Sometime later, Mr. Goff received another phone call from the same woman, and based on that conversation, he believed that the woman was in imminent danger of deadly harm from her estranged husband. Mr. Goff called the State Police to have them intervene to protect

---

[2] The facts are gleaned from the complaint and the extrinsic documents upon which it is based. See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). For the purposes of this motion, they are presented in the light most favorable to the plaintiff, as the non-moving party, and are accepted as true with all reasonable inferences drawn in his favor.

[3] The defendants indicate that a subsequent Agreement became effective on September 1, 2011 [before his change of status], and changed the probationary period from six months to 365 days. See Article 27, § 3 of www.passhe.edu/inside/hr/syshr/Bargaining_Agreements/spfpa_agr.pdf. Accordingly, Mr. Goff was still a probationary employee during the relevant periods of this action. Section 3 also indicates that the provisions of Section 1 [providing that permanent employees cannot be discharged without just cause and other benefits] shall not apply during the probationary period.

her.  The defendants claim in their motion to dismiss that Mr. Goff and the woman were having a romantic relationship at the time, a fact omitted in the complaint.  Mr. Goff and the woman were subsequently married.

The State Police called Defendant John Dillon, the Chief of the University Police Force, and informed him that Mr. Goff had made a report of the other officer's conduct to the State Police.  The following day, Chief Dillon gave a copy of an incident report to Mr. Goff's supervisor who asked the plaintiff about his motives in making the report, and whether there were existing problems between the two officers which led him to make the report.  The plaintiff told his supervisor that there were no problems between the two officers, and that he had made the report because of the involvement of a gun and the threat of deadly harm to the officer's wife.

Shortly thereafter, Mr. Goff received a letter from Kutztown's Human Relations Department informing him that he was required to attend a pre-disciplinary conference regarding charges made by Chief Dillon.  Those charges alleged that Mr. Goff had allowed an unauthorized passenger in a police car.  The complaint indicates that there was no factual basis supporting that allegation.  In fact, it alleges that there is no evidence that the plaintiff had committed any infraction of the employer's policies.  Instead, the plaintiff asserts, the charges levied against him by Defendant Dillon were a pretext to retaliate against the plaintiff for having made a report about the behavior of another officer.  Mr. Goff asserts that he is unaware of such an infraction as "having an unauthorized passenger in your vehicle for an extended period of time."  He further contends that no other officer has been terminated for that reason.

3

On May 4, 2012, Mr. Goff had his pre-disciplinary conference where the defendants were unable to substantiate the charges against him. Defendant Kutztown University then scheduled a second pre-disciplinary conference on June 7, 2012, on a second set of charges. These charges are unspecified in the complaint, but the plaintiff insists that they were unsubstantiated by any evidence.

Despite the alleged lack of evidence to support any charges against the plaintiff, Defendant Kutztown University terminated his employment on June 21, 2012. He was informed that he could not appeal the decision because he was a probationary employee. Mr. Goff then filed a grievance challenging his termination under the Collective Bargaining Agreement but the defendant failed to hold a hearing, again claiming that Mr. Goff was a probationary employee.

## II. STANDARD OF REVIEW

The defendants argue that this complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)6). An attack on the subject matter jurisdiction of a matter may be raised at any stage of litigation. See FED.R.CIV.P. 12(h)(3). The Court of Appeals for the Third Circuit noted that Rule 12(b)(1) was the proper means of raising the issue of whether the Eleventh Amendment bars federal jurisdiction. Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 (3d Cir. 1996) (a party may raise the issue of Eleventh Amendment immunity at the earliest state of litigation). There are two types of Rule 12(b)(1) motions. The first type, a facial attack, challenges only the court's subject matter jurisdiction. The second type, a

factual attack, allows the court to question the plaintiff's facts after the defendant files an answer.  See Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  As the defendants have not yet filed an answer, their motion is a facial attack.

The Third Circuit "cautioned against treating a Rule 12(b)(1) motion as a Rule 12(b)(6) motion and reaching the merits of the claims" because "the standard for surviving a Rule 12(b)(1) motion is lower than that for a 12(b)(6) motion."  Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).  The Third Circuit has also held that, when considering a facial attack under Rule 12(b)(1), "the trial court must accept the complaint's allegations as true."  NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341, n. 7 (3d Cir. 2001).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Following the Supreme Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleadings standards in federal actions have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss under Fed. R. Civ. P.12(b)(6).  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009); see also Phillips v. County of Allegheny, 515 F. 3d 224, 230 (3d Cir. 2008).

Therefore, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The court must accept all of the complaint's well-pleaded

5

facts as true but may disregard legal conclusions.  Iqbal, 556 U.S. at 679.  Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  Id.  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  Id.; see also Phillips, 515 F.3d at 234-235.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  Id. at 557.

## III.  DISCUSSION

Mr. Goff has brought this action against the defendants pursuant to 42 U.S.C. § 1983, alleging violations of his First and Fourteenth Amendment rights.  Under 42 U.S.C. § 1983, a private party may recover in an action against any person acting under the color

of state law who deprives the party of his or her constitutional rights.  Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not by itself confer substantive rights, but instead provides a remedy for redress when a constitutionally protected right has been violated.  Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).  Therefore, in order to succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the violation of a right secured by the Constitution, and (2) that the constitutional deprivation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

Initially, I note that Mr. Goff has conceded that the claims against Defendant Kutztown University and Defendant Dillon in his official capacity should be dismissed pursuant to the Eleventh Amendment to the Constitution, which bars suits in federal court against a state or its agencies, unless the state consents.  See Smith v. Sec'y of Dep't of Envtl. Prot. of Pa., 540 F.App'x 80, 81 (3d Cir. 2013); see also Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989) (it is well established that Section 1983 does not provide for damage claims against states, state agencies, or state officials in their official capacities because they are not considered "persons" under the statute).  Accordingly, I will dismiss Counts I, II, and III of the complaint, and the retaliation claim in Count IV insofar as it has been brought against Defendant Dillon in his official capacity.

To plead a First Amendment retaliation claim, "a plaintiff must allege: (1) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness for exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Township, 463 F.3d 285, 296 (3d Cir. 2006). Considering the retaliation claim as having been brought against Chief Dillon in his personal or individual capacity, however, provides no relief for the plaintiff. Mr. Goff alleges that his termination from the University Police Department was in retaliation for his calling the Pennsylvania State Police to report a potential disturbance at the residence of a fellow officer. He insists that, although he was a public employee, he "was not acting under a duty to report a work related matter to his supervisors." Instead, he alleges, "he was acting as a private citizen who properly reported to the police department with jurisdiction over the matter." See Document #7 at 6.

"It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Rankin v. McPherson, 483 U.S. 378, 383 (1987). The threshold inquiry in determining whether a governmental employer's employment decision violates the First Amendment rights of an adversely affected employee is whether the speech at issue "may be 'fairly characterized as constituting speech on a matter of public concern.[4]'" Rankin, 483 U.S.

---

[4] If the threshold is passed, a court must "balance . . . the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Educ., 391 U.S. 563, 568 (1968); Rankin, 483 U.S. at 384; Connick, 461 U.S. at 140. "Upon a finding that the speech in question is constitutionally protected, the plaintiff must prove that the speech was a substantial or motivating factor in the challenged employment decision."

8

at 384 (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)).  Speech on a matter of public concern is generally defined as speech "fairly considered as relating to any matter of political, social, or other concern to the community," Connick, 461 U.S. at 146, in contrast to speech "as an employee upon matters only of personal interest," id. at 147. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Id. at 147-48.

Upon careful review of this record, it is clear that Mr. Goff made the telephone call to the State Police not just as a private citizen, but as a fellow law enforcement officer and public employee.  If he had called purely as a private citizen, the State Police would have neither known of his employment nor been able to notify his superiors at the Kutztown University Police Department of the call.  It is more than likely that Mr. Goff informed the State Police of his position in law enforcement with hopes that the matter would be handled with some degree of dispatch.

Further, contrary to his contentions, Mr. Goff's call to the State Police concerned a purely private matter.  While it is admirable that the plaintiff suggests that any threat of domestic violence is a matter of public concern, he is mistaken under these circumstances.  The Assignment Report[5] of the State Police attached to the defendants' motion describes the State Police's response to the plaintiff's call.  See Document #3-2.

---

Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The burden then shifts to the defendant to show by a preponderance of the evidence that it would have reached the same decision absent the protected activity.

[5] I may consider this document here because it describes events referred to in the complaint and because it is a public record.  See Pryor v. National Collegiate Athletic Association, 288 F.3d 548, 560 (3d Cir. 2002); see also Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004).

The Report indicates that Mr. Goff called the State Police after he received a text from his co-worker's son that his father was threatening his mother with a gun. The Report also indicates that the plaintiff's co-worker "was divorcing his wife and that she began to see his best friend who is also a Kutztown University Police Officer." Id. Mr. Goff made the call as the then-boyfriend of his co-worker's wife whom he was trying to rescue. The call was not a global or societal effort to eradicate domestic violence, but a matter of personal interest to Mr. Goff. He was very much involved in the situation.

As such, Mr. Goff's conduct cannot be "fairly characterized as constituting speech on a matter of public concern," and Chief Dillon's employment decision cannot be found to have violated Mr. Goff's First Amendment rights. See Rankin, 483 U.S. at 384; see also Connick, 461 U.S. at 146 ("When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment"); see also id. at 146-147 (citing Board of Regents v. Roth, 408 U.S. 564 (1972)) ("Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable").

In conclusion, the plaintiff concedes that Counts I through III, and Count IV against Chief Dillon in his official capacity should be dismissed pursuant to the Eleventh Amendment. I will also dismiss, however, Count IV against Chief Dillon in his personal

or individual capacity.  As a public employee, Mr. Goff reported a matter to the State Police which cannot be "fairly characterized as constituting speech on a matter of public concern."  The substance of the call did not relate to any matter of political, social, or other concern to the community, but to the safety of his paramour at the hands of her estranged husband.  This situation was a very private matter and cannot be considered constitutionally protected conduct for a public employee.  Accordingly, Mr. Goff has failed to establish a *prima facie* case for First Amendment retaliation against Chief Dillon in his personal or individual capacity.  I will grant the defendants' motion to dismiss in its entirety.

    An appropriate Order follows.